IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL K-9, INC. | : | |
| | : | |
| Plaintiff, | : | Case No. 2:09-cv-608 |
| | : | |
| v. | : | JUDGE MARBLEY |
| | : | |
| NATIONAL CANINE ASSOC., INC., | : | Magistrate Judge King |
| | : | |
| Defendant. | : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendant National Canine Association, Inc.'s ("NCA") Motion to Dismiss (Doc. 18).  NCA contends that this Court cannot exercise personal jurisdiction over it because it has not purposefully availed itself of the benefits of doing business in the state of Ohio.  For the reasons set forth below, NCA's Motion is **GRANTED**.

**II. BACKGROUND**

**A. FACTUAL BACKGROUND**

National K-9 is in the business of training dogs (through Obedience Training, Behavior Counseling, and Puppy Preschool), offering educational services for others (through its School for Dog Trainers), and providing dog boarding services.  National K-9 actively maintains its intellectual property rights, including its federally registered trademark of "NATIONAL K-9." National K-9 has been using that mark and offering dog-related educational and training services under it since 1975.  National K-9 used to engage in print advertising, but upon establishing a successful website, http://www.nk9.com, in 1996, National K-9 stopped all print advertising and now relies on internet advertising, word of mouth, and sponsorship.

National K-9 has spent over $450,000 over the past ten years on advertising and marketing. It sponsors both continuing education workshops and industry professionals speaking at trade shows. National K-9 is a continuing sponsor of the International Association of Canine Professionals ("IACP"), which caters to all sorts of canine professionals. National K-9's advertising efforts have paid off, and it has grossed over $4 million over the past five years. It has trained tens of thousands and dogs and over 1,500 dog trainers from all 50 states and 42 countries.

In 1998, National K-9 was granted federal trademark registration for the trademark "NATIONAL K-9" as Registration No. 2,204,026 for "training of dogs for others and educational services, namely, providing courses of instruction dealing with dogs and the training of dogs." National K-9's registration has become incontestable under 15 U.S.C. sections 1065 and 1115(b).

National K-9 recently became aware of NCA's use of the website http://nationalcanine.com. NCA uses the website, hosted in Florida, to provide discussion boards for users and to solicit participants and sponsors for dog shows throughout the country. After creating a user account, a registered user can: "post comments with your name, send news with your name, have a personal box in the Home, select how many news you want in the Home, customize the comments, access to user's Custom Box, [and] some other cool stuff." The website also allows for the download of a variety of registration forms, including dog registration forms, membership/entry forms, judge forms, and affiliate association forms. The website lists past breed champions; the current list features dogs and owners from New York, Pennsylvania, North Carolina, and Arizona. The "Contact Us" page of the website lists a

mailing address in Florida, as well as two email addresses.  At least two Ohio users have participated in the forums hosted on the website.  On August 19, 2007, "rosebud81592," a user listed from Wooster, Ohio, asked, "Are there any future shows planned in Ohio?  What does a club have to do to host an NCA show?"  On September 23, 2006, a user named "Helena" posted that she lives on a small farm in southwest Ohio and wanted to get back into showing dogs after taking a few years off for health reasons.  Users are able to submit news stories to published on the site, with a warning that "not all submissions will be posted" and "your submission will be checked for proper grammar and may be edited by our staff."  On April 25, 2005, a user listed "Chinese Imperials and Shih Tzus of Quality" for sale in northwest Ohio.  There is a section of the website labeled "Canine Products," but that page is currently empty.

### B. PROCEDURAL BACKGROUND

National K-9 asked NCA to refrain from what National K-9 considered to be its infringing use of the designation "NATIONAL CANINE."  NCA refused to comply with National K-9's request.  On July 17, 2009, National K-9 filed a complaint alleging trademark infringement, using a false designation of origin, and unfair competition.  On October 30, 2009, before NCA could respond to the complaint, National K-9 filed an Application for Preliminary Injunction.

A Preliminary Injunction Hearing was held on November 24, 2009.  The sole testifying witness at the Hearing was Robert W. Jervis, President of National K-9.  National K-9's Application for Preliminary Injunction was subsequently denied.  NCA then filed the present Motion to Dismiss, alleging that this Court may not properly exercise personal jurisdiction over it.

### III. STANDARD OF REVIEW

NCA has filed a motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction. The plaintiff bears the burden of proving personal jurisdiction exists. *CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1262-63 (6th Cir. 1996).  In the face of a supported motion to dismiss, the plaintiff may not rest on his pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)).  When the Court considers a motion to dismiss pursuant to Rule 12(b)(2) without an evidentiary hearing on the issue of personal jurisdiction, however, the plaintiff "'need only make a *prima facie* showing of jurisdiction.'" *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)) (internal citation omitted).  The plaintiff can make this *prima facie* showing by "'establishing with reasonable particularity sufficient contacts between [the Defendants] and the forum state to support jurisdiction.'" *Neogen Corp.*, 282 F.3d at 887 (quoting *Provident Nat'l Bank v. California Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)).

In deciding a Rule 12(b)(2) motion to dismiss, the Court is to construe the facts in the light most favorable to the non-moving party.  Significantly, the Court is not to weigh the controverting assertions of the party seeking dismissal. *CompuServe*, 89 F.3d at 1262 (citing *Theunissen*, 935 F.2d at 1459).  This refusal to weigh the defendants' controverting assertions is necessary to prevent non-resident defendants from avoiding jurisdiction simply by filing an

affidavit that denies all jurisdictional facts. *Compuserve*, 89 F.3d at 1262 (citing *Theunissen*, 935 F.2d at 1459).

## IV. LAW & ANALYSIS

A federal court sitting in a diversity matter can exercise personal jurisdiction over a defendant if jurisdiction is "(1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Tharo Sys., Inc. v. Cab Produkttechnik GMBH & Co. KG*, 196 F. App'x 366, 369 (6th Cir. 2006) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002)). In this case, neither requirement is met.

### A. OHIO'S LONG-ARM STATUTE

Pursuant to Ohio's long-arm statute, a court may properly exercise personal jurisdiction over a non-resident defendant who "caus[es] tortious injury in [Ohio] by an act or omission outside [Ohio] if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in [Ohio]." Ohio Rev. Code § 2307.382(A)(4). Section (A)(4) of the statute "'require[s] a finding that (1) an act or omission outside the state caused tortious injury in Ohio, and (2) the defendant regularly conducted activity in Ohio.'" *Bird,* 289 F.3d at 876 (quoting *Estate of Poole v. Grosser*, 731 N.E.2d 226, 229 (Ohio App. 1999)). A defendant need not be physically present in the forum state for personal jurisdiction to exist. *Goldstein v. Christiansen*, 638 N.E.2d 541, 544 (Ohio 1994).

Transacting business with residents of Ohio through an online website can satisfy Ohio's long-arm statute. *See, e.g.*, *Perrow v. Grand Canyon Education, Inc.*, No. 2:09-cv-670, 2010

5

WL 271298 (S.D. Ohio 2010) (finding that defendant online university's conducting business in Ohio by allowing Ohio residents to enroll and participate in online classes satisfied Ohio's long-arm statute).  The analysis pursuant to Ohio's long-arm statute mirrors that used to determine "purposeful availment" for due process purposes.  *See Bird*, 289 F.2d at 876 (finding that defendant "regularly conducted business in Ohio" based upon a finding that defendant purposefully availed itself of the benefits of doing business in Ohio).[1]  Because, as discussed below in the due process analysis, the Court finds that NCA has not purposefully availed itself of the benefits of doing business in Ohio, NCA has not sufficiently conducted business in Ohio, and Ohio's long-arm statute therefore does not confer the Court with personal jurisdiction over NCA.

### B. DUE PROCESS

In evaluating whether personal jurisdiction complies with due process, the Court must determine whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend "'traditional notions of fair play and substantial justice.'" *Bird*, 289 F.3d at 872 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The Sixth Circuit has adopted a three-part test for determining whether the exercise of personal jurisdiction over an out-of-state defendant comports with due process: (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3)

---

[1] While the Sixth Circuit has "recognized that Ohio's long-arm statute is not coterminous with federal constitutional limits," it has "consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend 'traditional notions of fair play and substantial justice'" when analyzing the propriety of personal jurisdiction under Ohio's long-arm statute.  *Bird*, 289 F.3d at 871 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

the acts of the defendant or the consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co. v. Mohasco*, 401 F.2d 374, 381 (6th Cir. 1968).  Because the Court finds that Defendant has not purposefully availed itself of the privileges of doing business in Ohio, the second and third elements do not require analysis.

A defendant may purposefully avail himself of the privilege of acting in a forum state by operating a website, "if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen*, 282 F.3d at 890 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997).  Simply maintaining a passive website, however, is not enough: "[t]he level of contact with a state that occurs simply from the fact of a website's availability on the internet is . . . an 'attenuated' contact that falls short of purposeful availment." *Neogen*, 282 F.3d at 890 (quoting *Bensusan Rest. Corp. v. King*, 937 F.Supp. 295, 300 (S.D.N.Y. 1996)).  Maintaining a website through which residents of the forum state can and do submit orders and make purchases, on the other hand, can be sufficient to establish purposeful availment.  *Bird*, 289 F.3d at 874-75.  *See also Neogen*, 282 F.3d at 890 (holding that the defendant purposefully availed himself of the privilege of doing business in the forum state by granting resident-clients passwords to access services on the website and welcoming the business of forum-state residents on a regular basis); *Perrow*, 2010 WL 271298, at *6 (holding that defendant online university purposefully availed itself of the privilege of doing business in Ohio by allowing Ohio residents to enroll and participate in online classes through the website).

NCA's website falls somewhere between "active" and "passive."  While no commercial transactions occur on the website, users do interact with it by posting on message boards, adding

links to the site's list of "web links," submitting news, and advertising their own services.  While "guests" are able to browse the site, users have to create "nicknames" and "passwords" in order to post information to the site.[2]  In addition, the website explicitly notes that any news submitted to the site will be regulated by site administrators.[3]  The website, therefore, is not completely passive, as it allows users to create accounts, and site administrators control the content posted.  *See Neogen*, 282 F.3d at 890.

While the website is readily accessible from Ohio, only two of its registered users are located in the state.  *See Perrow v. Grand Canyon Ed., Inc.*, 2010 WL 271298, at *4 (S.D. Ohio 2010) (distinguishing finding personal jurisdiction where defendant had contact with thousands of forum state residents from the Third Circuit's finding no personal jurisdiction in *Kloth v. Southern Christian University*, 320 F. App'x 113 (3d Cir. 2008), where defendant had contact with only two forum state residents).  In addition, Defendant's *only* contact with Ohio is through its website.  *See Rothschild Berry Farm v. Serendipity Group LLC*, 84 F.Supp.2d 904, 910 ("'We agree that simply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another. . . . [T]here must be "something more" to demonstrate that the defendant directed his activity toward the forum state.'" (quoting *Panavision Int'l , L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998))); *Oasis Corp. v. Judd*, 132 F.Supp.2d 612, 623 (S.D. Ohio 2001) ("As far as this Court has been able to ascertain, no federal court has ever upheld personal jurisdiction

---

[2]Registration on the site is free, but a user is required to enter a "nickname," email address, password, and security question in order to create an account.

[3]The "Submit News" page explains that "not all submissions will be posted," and all submissions "will be checked for proper grammar and may be edited by our staff."

solely on the ground that the defendant's web site happened to be accessible from the forum state."); *cf. Quality Solutions v. Zupanc*, 993 F.Supp. 621, 623 (N.D. Ohio 1997) ("Defendants' marketing efforts, *through both the Quality Progress trade journal and the Defendants' Internet site*, represent deliberate attempts to solicit business from the Ohio market." (emphasis added)).

Because NCA's only contact with Ohio is through its relatively passive website, which has only two registered users from Ohio, the Court finds that NCA has not purposefully availed itself of the privileges of doing business in Ohio. As a result, exercising personal jurisdiction over NCA would not comport with due process.

## V. CONCLUSION

This Court's exercise of personal jurisdiction over NCA comports with neither Ohio law nor due process. NCA's Motion to Dismiss is therefore **GRANTED**.

**IT IS SO ORDERED**.

                                                     s/Algenon L. Marbley
                                                    **Algenon L. Marbley**
                                                    **United States District Judge**

**Date: June 30, 2010**